# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re GALENA BIOPHARMA, INC. DERIVATIVE LITIGATION, | Case No. 3:14-cv-382-SI (LEAD) |
| | **OPINION AND ORDER ON MOTION TO STAY** |

Christopher A. Slater and Michael J. Ross, SLATER ROSS, Sovereign Hotel, 4th Floor, 710 S.W. Madison Street, Portland, OR 97205; Robert B. Weiser, Brett D. Stecker, Jeffrey J. Ciarlanto, THE WEISER LAW FIRM, P.C., 22 Cassatt Avenue, First Floor, Berwyn, PA 19312; Kathleen A. Herkenhoff, THE WEISER LAW FIRM, P.C., 12707 High Bluff Drive, Suite 200, San Diego, CA 92130; Michael J. Hynes and Ligaya Hernandez, HYNES KELLER & HERNADEZ, LLC, 1150 First Avenue, Suite 501, King of Prussia, PA 19406; Nadeem Faruqi, FARUQI & FARUQI, 369 Lexington Avenue, 10th Floor, New York, NY 10017; William B. Federman and Sara E. Collier, FEDERMAN & SHERWOOD, 10205 N. Pennsylvania Avenue, Oklahoma City, OK 73120. Of Attorneys for Plaintiffs.

Kristen Tranetzki, ANGELI UNGAR LAW GROUP LLC, 121 S.W. Morrison Street, Suite 400, Portland, OR 97204; Jonathan R. Tuttle, DEBEVOISE & PLIMPTON LLP, 555 13th Street N.W., Suite 1100E, Washington D.C., 20004. Of Attorneys for Defendant Mark J. Ahn.

Robert L. Aldisert and Misha Isaak, PERKINS COIE LLP, 1120 N.W. Couch Street, 10th Floor, Portland, OR 97209. Of Attorneys for Defendants Rudolph Nisi, Sanford Hillsberg, Steven Kriegsman, Stephen Galliker, Richard Chin, Mark Schwartz, Ryan Dunlap, and William Ashton.

Lois O. Rosenbaum and Stephen H. Galloway, STOEL RIVES LLP, 900 S.W. Fifth Avenue, Suite 2600, Portland, OR 97204; Paul R. Bessette, Michael J. Biles, James P. Sullivan, KING & SPALDING LLP, 401 Congress Avenue, Suite 3200, Austin, TX 78701. Of Attorneys for Nominal Defendant Galena Biopharma, Inc.

**Michael H. Simon, District Judge.**

This shareholder derivative action is brought by shareholders ("Plaintiffs") of nominal defendant Galena Biopharma, Inc. ("Galena" or "Company"). Plaintiffs allege that certain members of Galena's Board of Directors ("Board") and executive officers of Galena (collectively, "Defendants") breached their fiduciary duties and were unjustly enriched by engaging in a scheme to artificially inflate the price of Galena's stock. Plaintiffs further allege that many of the Defendants sold their personally-owned Galena stock at artificially inflated prices, in a classic "pump and dump" insider trading scheme.

Before the Court is a motion to stay filed by Defendants Rudolph Nisi, Sanford Hillsberg, Steven Kriegsman, Stephen Galliker, Richard Chin, Mark Schwartz, Ryan Dunlap, and William Ashton (collectively, "Director Defendants"), which was joined by Defendant Mark J. Ahn (collectively "Moving Defendants").[1] For the following reasons, the motion to stay is granted in part.

## BACKGROUND

### A.  Factual Background

A more detailed factual background, as alleged in the Verified Amended Consolidated Shareholder Derivative Complaint ("Amended Complaint"), is set out in the Court's opinion on the motions to dismiss. The Court does not repeat those facts here but discusses only the limited background relevant to the motion to stay.

Galena is a biotechnology company based in Portland, Oregon. The Company focuses on the development and commercialization of targeted oncology treatments that address major

---

[1] The Director Defendants and Defendant Ahn also each filed motions to dismiss, which were heard at the same time as the motion to stay. The motions to dismiss are addressed in a separate opinion.

unmet medical needs to advance cancer care. Galena is pursuing the development of cancer

therapeutics, including its main product candidate, NeuVax™, for the treatment of breast cancer

and other tumors. The Amended Complaint alleges that Defendants engaged in improper conduct

to artificially inflate the value of Galena stock and that most of the Defendants then sold much of

their personally-owned stock at the inflated prices.

In February 2014 and March 2014, articles appeared in the financial news media

discussing the alleged misconduct. On February 17, 2014, Galena's Board formed a Special

Committee of the Board of Directors ("Special Committee"), consisting of Defendants

Kriegsman, Galliker, Ashton, and Hillsberg, to investigate the allegations of wrongdoing being

reported in the press. On March 14, 2014, Irving Einhorn joined Galena's Board. At

approximately the same time that Einhorn joined the Board, the Special Committee was

reconstituted to include only two members: Einhorn and Ashton (neither of whom had sold any

shares during the relevant period).

On March 17, 2014, Galena announced that it was under investigation by the Securities

Exchange Commissioner ("SEC"), stating in its Form 10-K annual report: "In February 2014, we

learned that the SEC is investigating certain matters relating to our company and an outside

investor-relations firm that we retained in 2013. We have been in contact with the SEC staff

through our counsel and are cooperating with the investigation." Upon disclosure of the SEC

investigation, Galena's common stock share price dropped to $2.68, representing a 16.5 percent

loss in a single day.

On or about February 27, 2014, the first lawsuit was filed against Galena: a shareholder

derivative action filed in the Circuit Court of the State of Oregon for the County of Multnomah.

On March 5, 2014, a federal securities class action was filed in this District Court, and on

March 7, 2014, the first lawsuit in this consolidated shareholder derivative action was filed. Additional securities class action lawsuits were filed in this Court on March 10, 2014 and March 12, 2014. In addition, other derivative lawsuits, ultimately consolidated into this action, were filed on March 31, 2014, and one additional securities class action lawsuit was filed in this Court on April 4, 2014.

The Special Committee consisting of Einhorn and Ashton investigated the allegations contained in the press reports and in the derivative and class action complaints filed in this Court and the Multnomah County Circuit Court. On May 29, 2014, additional derivative actions were filed in the Delaware Court of Chancery. The Delaware actions allege substantially similar facts and claims as alleged in the Oregon actions.

On July 15, 2014, the Special Committee completed its report, concluding that Galena and its officers and directors did not violate any law or breach any applicable fiduciary duties and that Galena should not pursue any litigation.[2] On July 21, 2014, Galena's Board disbanded the Special Committee. The Board then appointed a new, "fully empowered" single-member Special Litigation Committee ("SLC") consisting only of Einhorn. This single-member SLC was authorized by the Board to: (1) investigate and evaluate the allegations and issues raised in the Oregon and Delaware lawsuits; (2) prepare reports, arrive at decisions, and take other actions in connection with these lawsuits as the SLC deems appropriate and in the best interests of Galena and its stockholders, in accordance with Delaware law; and (3) engage accountants and advisors, including independent legal counsel, that the SLC deems necessary or desirable in order to assist it in the discharge of its responsibilities. In August 2014, the SLC retained the law firm of

---

[2] It appears that the report by the Special Committee was not delivered to the Board or made public until September 25, 2014, when Galena posted a copy of the report on its public website and issued a press release regarding the report. *See* http://galenabiopharma.com/special-committee-report/ (last visited on October 19, 2014).

Young, Conaway, Stargatt & Taylor, LLP to act as its counsel. The SLC, with the assistance of

its counsel, is investigating the allegations contained in the various lawsuits.

## B.  Procedural Background

### 1.  Previous motions

On August 6, 2013, Galena's Board attempted to amend Galena's Bylaws through

unanimous written consent of the Board, adding a forum selection clause that requires a

Delaware forum for certain actions, including shareholder derivative lawsuits. On April 18,

2014, Galena and the individual Defendants filed a motion to dismiss this consolidated derivative

action, asserting that the forum selection clause adopted by the Board was valid and enforceable

and required dismissal of the action before this Court. After this motion was fully briefed, but

before oral argument, the Court asked the parties to address certain questions and provide certain

information. Shortly thereafter, Defendants withdrew their motion.

Under Delaware law, a board is prohibited from unilaterally amending a corporation's

bylaws unless the company's Certificate of Incorporation specifically allows such an

amendment. As Plaintiffs later explained, counsel for Plaintiffs raised the fact with then-counsel

for Defendants that in Galena's Certificate of Incorporation there is no authority for the Board

unilaterally to amend Galena's Bylaws; instead, the Certificate requires a shareholder vote with

not less than 75 percent voting to approve any proposed amendment to the Bylaws. The motion

was then withdrawn.

A few months later, Galena filed a motion to stay this action until after Galena's SLC,

consisting only of Einhorn, finished its investigation and report. The Court denied this motion.

Galena moved for reconsideration, which the Court denied.

### 2.  Pending motions

On November 13, 2014, the Director Defendants filed a motion to dismiss and a motion to stay. In the motion to stay, the Director Defendants argue that this consolidated derivative case should be stayed pending resolution of the later-filed Delaware derivative action and the securities class action pending before this Court. Defendant Ahn joined the Director Defendants' motion to stay and also filed a separate motion to dismiss.

### DISCUSSION

### A.  Moving Defendants' Request for a Stay in Favor of the Delaware Action

In support of their motion to stay, the Moving Defendants argue that the United States Supreme Court, the U.S. Court of Appeals for the Ninth Circuit, the Delaware Court of Chancery, and the Oregon Supreme Court all recognize that "the state of incorporation should be allowed to *adjudicate* actions involving the internal affairs of the corporation." Def's Reply Br. at 7 (emphasis added). This statement is not entirely correct. Although these courts apply the "internal affairs doctrine," it is a choice of law doctrine recognizing that claims involving the "internal affairs" of corporations are *subject to the laws* of the state of incorporation, not that such claims must be *adjudicated in* the state of incorporation. *See, e.g.*, *Atherton v. F.D.I.C.*, 519 U.S. 213, 223-24 (1997) (recognizing that the "internal affairs doctrine" is a conflict of laws principle that recognizes that the state of incorporation should have the authority to regulate a corporation's internal affairs and noting that other "[s]tates normally look to the State of a business' incorporation for the law that provides the relevant corporate governance general standard of care"); *Batchelder v. Kawamoto*, 147 F.3d 915, 920 (9th Cir. 1998) ("Under the 'internal affairs' doctrine, the rights of shareholders in a foreign company, including the right to sue derivatively, are determined by the law of the place where the company is incorporated."); *cf. Horner v. Pleasant Creek Mining Corp.*, 165 Or. 683, 703-04 (1940) (noting that the Oregon trial

PAGE 6 – OPINION AND ORDER ON MOTION TO STAY

court did not abuse its discretion in assuming jurisdiction of claims brought by a Washington

shareholder against a Washington corporation and individual defendants who are all residents of

Washington). Courts outside of Delaware often litigate issues involving a Delaware

corporation's internal affairs. *See, e.g.*, John Amour, *et al.*, *Delaware's Balancing Act*, 87 Ind. L.

J. 1345, 1350 (2012) (discussing the trend of cases involving the internal affairs of Delaware

corporations being litigated in venues outside of Delaware, stating "[n]evertheless, our research

shows that the vast majority of option backdating suits involving Delaware companies were filed

outside Delaware. . . . The loss of potentially important cases appears to generalize beyond

options backdating. For example, in our empirical research, we also studied cases that give rise

to publicly distributed opinions-the ones that generate precedents. Delaware is losing market

share for these cases as well").

  In arguing that a stay in favor of the Delaware action is warranted in this case, the

Moving Defendants rely heavily on *In re Countrywide Fin. Corp. Derivative Litig.*, 542

F. Supp. 2d 1160, 1170 (C.D. Cal. 2008). The court in *In re Countrywide* granted a partial stay,

staying federal class action claims because they were sufficiently parallel to class action claims

alleged in Delaware, while declining to stay federal derivative claims under federal and state law

because no sufficiently parallel claims were brought in state court. The court in *Countrywide*,

however, granted the partial stay based on the *Colorado River*[3] doctrine, and the Moving

Defendants offer no argument why the *Colorado River* doctrine supports a stay in this case.

  The Ninth Circuit has held that "the *Colorado River* doctrine is a narrow exception to

'the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.'"

*Holder v. Holder*, 305 F.3d 854, 867 (9th Cir. 2002) (quoting *Colorado River*, 424 U.S. at 817).

---

[3] *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976).

PAGE 7 – OPINION AND ORDER ON MOTION TO STAY

A *Colorado River* stay is appropriate only in "exceptional circumstances." *Id.* The court in

*Countrywide* found "exceptional circumstances" warranting a partial stay.[4] Such "exceptional

circumstances" are not present here.

Under the *Colorado River* doctrine, a federal district court may decline to exercise or

postpone the exercise of its jurisdiction when there are concurrent state and federal suits and

when doing so would promote wise and sound judicial administration, including the conservation

of judicial resources and the avoidance of piecemeal litigation. *Colorado River*, 424 U.S. at 817.

Courts may, however, "refrain from deciding an action for damages only in 'exceptional' cases,

and [where] 'the clearest of justifications' support dismissal." *R.R. St. & Co. v. Transp. Ins.

Co.*, 656 F.3d 966, 978 (9th Cir. 2011) (quoting *Colorado River*, 424 U.S. at 818-19).

Eight factors guide the court regarding whether to grant a *Colorado River* stay:

> (1) which court first assumed jurisdiction over any property at
> stake; (2) the inconvenience of the federal forum; (3) the desire to
> avoid piecemeal litigation; (4) the order in which the forums
> obtained jurisdiction; (5) whether federal law or state law provides
> the rule of decision on the merits; (6) whether the state court
> proceedings can adequately protect the rights of the federal
> litigants; (7) the desire to avoid forum shopping; and (8) whether
> the state court proceedings will resolve all issues before the federal
> court.

*Id.* at 978-79. The balancing of these factors should be "'heavily weighted in favor of exercising

jurisdiction.'" *Countrywide*, 542 F. Supp. 2d at 1170 (quoting *Moses H. Cone Mem. Hosp. v.

Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)). Courts must be "mindful that '[a]ny doubt as to

---

[4] The Court in *Countrywide* noted that: (1) the specific claim at issue was raised first
before the Delaware court; (2) the Delaware case was further along in the litigation; (3) it was
the type of case where the risks of inconsistent rulings were particularly concerning, because the
case involved potentially enjoining a multibillion dollar merger that would affect the entire
mortgage industry; (4) it was vital that the issues raised in the California and Delaware cases be
resolved quickly, clearly, and uniformly; and (5) it was thus a "prime scenario" for a *Colorado
River* stay. *Countrywide*, 542 F. Supp. 2d at 1172-73.

whether a factor exists should be resolved against a stay' or dismissal." *R.R. St.*, 656 F.3d at 979

(quoting *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990) (alteration in

original)). Balancing the factors in this case supports this Court exercising jurisdiction. The first

factor is not applicable. The remaining factors are discussed below.

### 1. Inconvenience of the federal forum

This factor supports exercising jurisdiction because the federal forum is not inconvenient.

Galena's headquarters are in Portland and much of the evidence and many of the witnesses are

located in this forum.

### 2. Piecemeal litigation

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby

duplicating efforts and possibly reaching different results." *Am. Int'l Underwriters (Phillipines),*

*Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988). "The mere possibility of

piecemeal litigation does not constitute an exceptional circumstance . . . . Instead, the case must

raise a 'special concern about piecemeal litigation' . . . ." *R.R. St.*, 656 F.3d at 979 (quoting

*Travelers*, 914 F.2d at 1369; citing *Moses H. Cone*, 460 U.S. at 20-21) (internal citation omitted).

Special concerns may arise if the state proceedings are advanced and have already decided issues

that are now before the federal court, thereby creating a high possibility of inconsistency, the

state action is "vastly more comprehensive" than the federal action, or there is evidence of a

strong federal policy against piecemeal litigation in favor of trying all the claims in state court.

*See Travelers*, 914 F.2d at 1369; *Am. Int'l*, 843 F.2d at 1258.

The Court does not find any "special concerns" regarding piecemeal litigation in this case

that warrant this factor weighing in favor of staying the case. The Amended Complaint is

comprehensive and it has not been argued that the Delaware case is "vastly more

comprehensive." Additionally, no argument has been raised that there is a strong federal policy

in shareholder derivative actions that favor trying all claims in state court. Finally, the Delaware consolidated derivative cases are not advanced and the Delaware court has not decided issues on the merits that this Court will be deciding anew. *See In re Ormat Techs., Inc. Derivative Litig.*, 2011 WL 3841089, at *7 (D. Nev. Aug. 29, 2011) (finding this factor weighed against a stay even though the allegations in the state and federal cases were substantially similar because the defendant had "not demonstrated that there [was] anything exceptional in the case that would justify special concern about this piecemeal litigation").

### 3. Order of jurisdiction

This factor concerns the order in which the forums obtained jurisdiction. The dates of filing are not dispositive and courts should not take a "mechanical approach" but should instead consider "the realities of the case at hand." *R.R. St.*, 656 F.3d at 980 (quotation marks and citation omitted). Courts may also consider the relative progress of the cases. *See Moses H. Cone*, 460 U.S. at 21. Here, this factor strongly supports exercising jurisdiction because this Court obtained jurisdiction nearly three months before the Delaware court and because the consolidated cases before this Court have progressed further. The Delaware case currently is stayed, and this Court already has resolved on the merits a motion to stay pending the SLC investigation and has two fully-briefed and argued motions to dismiss that are being resolved in a separate Opinion and Order concurrently with the pending motion to stay.

### 4. Source of law

Delaware law governs the claims in this case. The fact that state law governs, however, does not support a stay except in "rare circumstances." *Travelers*, 914 F.2d at 1370. When a case involves routine state law, such as claims for breach of fiduciary duty and breach of contract, a district court is considered capable of deciding such issues and there are no "rare circumstances" supporting a stay. *See R.R. St.*, 656 F.3d at 980-81; *Travelers*, 914 F.2d at 1370. Here, the

Amended Complaint alleges claims for breach of fiduciary duty, unjust enrichment, rescission of a contractual clause, gross mismanagement, and abuse of control. These are routine state law claims and do not support a stay. *See In re Ormat*, 2011 WL 3841089, at *8 (finding that this factor did not support a stay because "the case involves routine issues of state law breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, and unjust enrichment" and that the federal court "is fully capable of deciding these issues and, as such, there are no 'rare circumstances'").

### 5. Adequacy of state court to protect federal plaintiffs' interests

The Court has no reason to believe that the Delaware state court cannot adequately protect the rights of the federal litigants. This factor, however, is not particularly important in supporting staying federal court jurisdiction in cases such as the one presented here. *See Travelers*, 914 F.2d at 1370 (noting that the U.S. Court of Appeals for the Ninth Circuit "has not applied this factor against the exercise of federal jurisdiction, only in favor of it" and the fact that the state action can adequately protect the rights of federal plaintiffs "is not enough to justify the district court's deference to the state action") (quotation marks and citation omitted). This factor is "more important when it weighs in favor of federal jurisdiction" and "if there is a possibility that the parties will not be able to raise their claims in the state proceeding, a stay or dismissal is inappropriate." *R.R. St.*, 656 F.3d at 981.

### 6. Forum shopping

"Forum shopping refers to '[t]he practice of choosing the most favorable jurisdiction or court in which a claim might be heard.'" *R.R. St.*, 656 F.3d at 981 (citation omitted) (alteration in original). This factor supports exercising jurisdiction. This Court is the forum chosen by Plaintiffs nearly three months before any other derivative actions against Galena were filed in Delaware, yet Defendants have repeatedly attempted to avoid this forum in favor of Delaware.

PAGE 11 – OPINION AND ORDER ON MOTION TO STAY

### 7.   Whether the state case is sufficiently parallel

The final factor "is whether the state court proceeding sufficiently parallels the federal proceeding." *R.R. St.*, 656 F.3d at 982. This factor supports a stay because the Delaware proceeding appears to be able to resolve all the issues that are also before this Court.

### 8.   Conclusion

Balancing the relevant factors, the Court does not find "exceptional circumstances" warranting a stay in this case under the *Colorado River* doctrine.

## B.  The Moving Defendants' Request for a Stay in Favor of the Securities Class Action

The Moving Defendants also move to stay this consolidated derivative action until the securities class action also pending before this Court is resolved. The Moving Defendants argue that courts routinely stay derivative actions until the culmination of a securities class action when the cases arise from the same factual allegations and the evidence in the former could jeopardize the company's defense in the latter.

The Court has inherent power to control its docket "in a manner which will promote economy of time and effort for itself, for counsel, and for litigants." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). The exercise of this power is left to the Court's discretion. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112-13 (9th Cir. 2005). In considering a stay, the Court weighs three factors: (1) the possible damage that might result from granting a stay; (2) the hardship or inequity a party may suffer in going forward without a stay; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law" that would result from a stay. *Id.* at 1110 (quoting *CMAX*, 300 F.2d at 268).

The party seeking a stay ""must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else.'" *Lockyer*, 398 F.3d at 1109 (quoting *Landis v. N. Am. Co.*, 299

U.S. 248, 255 (1936)). Neither the parties nor the issues need be identical in order to stay "proceedings in one suit . . . to abide the proceedings in another." *Landis*, 299 U.S. at 254. A court may exercise the stay "whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Dependable Highway Exp. Inc. v. Navigators Ins. Co.*, 489 F.3d 1059, 1066 (9th Cir. 2007) (citation and internal quotation marks omitted). "Only in rare circumstances," however, "will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Lockyer*, 398 F.3d at 1109-10 (quoting *Landis*, 299 U.S. at 255). When the term of the stay is lengthy or indefinite, a stronger showing is required to justify issuing the stay. *Yong v. I.N.S.*, 208 F.3d 1116, 1119 (9th Cir. 2000).

### 1. The possible harm if a stay is granted

The Moving Defendants argue that Plaintiffs will suffer no harm if a stay is granted because no evidence is at risk of being lost. The Moving Defendants further argue that any harm to Plaintiffs if a stay is granted would be minor and does not outweigh the harm to Defendants if a stay is not granted.

Plaintiffs respond that they will be harmed by a stay because the securities class action could take several years to litigate and waiting for its resolution will unjustly prolong the time that Galena must wait to recoup its losses from the officers and directors. Plaintiffs further respond that if the derivative case is stayed for that length of time, witnesses will scatter, documents will be lost, and memories will fade.

The Court finds that there is at least "a fair possibility" that Plaintiffs will be harmed by a stay because of potential loss of evidence. "[T]he passage of time inevitably impairs the discovery process, especially as to the memories of witnesses." *Brenner v. Albrecht*, 2012

WL 252286, at *7 (Del. Ch. Jan 27, 2012) (finding prejudice to the plaintiffs in analyzing a similar motion to stay, but finding the risk of harm was mitigated by discovery in the securities class action). The Court disagrees with Moving Defendants' argument that because there may be discovery in the securities class action that Plaintiffs could eventually obtain, all harm to Plaintiffs by a stay is mitigated. At this juncture, it cannot be said that any potential discovery in the securities class action necessarily resolves all of the potential discovery needs of the Plaintiffs here. Although there will certainly be significant overlap in witnesses, not all witnesses will necessarily be the same and those witnesses that are the same may not be asked questions during discovery in the securities class action that Plaintiffs here may want answered. Additionally, the documentary evidence sought in the securities class action may not encompass all of the documentary evidence sought by Plaintiffs. No depositions have been taken yet and no written discovery has been propounded in the securities class action (because discovery is currently stayed under the Private Securities Litigation Reform Act, 15 U.S.C. §§ 77a, *et seq.* (1995) ("PSLRA")). Thus, it cannot be found at this stage in the proceedings that discovery in the securities class action cures all of the potential harm to Plaintiffs. Although the Court finds that there is a "fair possibility" of harm to Plaintiffs, this factor does not significantly weigh against a stay because Plaintiffs likely will eventually have access to discovery taken in the securities class action and because Defendants will remain under an obligation to preserve evidence.

### 2.  The possible harm if a stay is denied

Because there is a "fair possibility" that Plaintiffs will be harmed by a stay, the Moving Defendants must make a "clear case of hardship or inequity in being required to go forward." *Lockyer*, 398 F.3d at 1109. Additionally, the Moving Defendants' burden is higher because they seek an indefinite stay. *Yong*, 208 F.3d at 1119. The Moving Defendants fail to meet their high

burden of showing a hardship that cannot be remedied by a stay of discovery in this derivative

case until the Court rules on the motions to dismiss already filed in the securities class action.

### a. Potential harm to Galena

The Moving Defendants argue that Galena will suffer harm if a stay is not granted

because: (1) litigating the derivative case is a drain on Galena's financial and managerial

resources, which should be dedicated to Galena defending itself in the class action; (2) litigating

the derivative case jeopardizes Galena's defenses in the securities class action; and (3) discovery

may go forward in this case even though it is stayed in the securities class action under the

PSLRA.

Plaintiffs respond that: (1) litigating the securities class action and derivative cases

simultaneously is more efficient for Galena; (2) the Moving Defendants' arguments that the

defense of Galena and the individual directors and officers named in the securities class action

will be undermined if this derivative action is not stayed are speculative and can be handled if

and when they arise through effective case and discovery management, such as postponing the

depositions of the directors and officers whose testimony will be necessary to establish any of

Galena's affirmative defenses in the securities class action and entering protective orders; and

(3) the PSLRA does not apply to federal derivative actions.

### i. Company resources

Plaintiffs have the better argument that, under the circumstances of this case, it is more

efficient for Galena to litigate the securities class action and the derivative cases simultaneously.

Both cases are before the same judge in the same court, and discovery issues can be resolved in a

consistent manner. Further, the securities class action and the derivative cases are both in such

early stages that they can, upon request, be consolidated for discovery purposes, thereby further

conserving Galena's resources. If the derivative case is stayed and discovery progresses in the

PAGE 15 – OPINION AND ORDER ON MOTION TO STAY

securities class action, Galena ultimately may be subject to duplicative discovery, which would be a greater drain on the Company's managerial and financial resources. *See Smith ex. rel. Apollo Grp., Inc. v. Sperling*, 2012 WL 79237, at \*3 (D. Ariz. Jan. 11, 2012) (finding that allowing both the securities class action and the derivative case "to proceed at the same time will actually conserve [the company's] financial resources" and noting that because of the early stages of both cases, the company could seek consolidation for discovery purposes "and avoid unnecessary duplicative discovery and expenditure of financial resources that would occur if [the company] had to engage in discovery on the same issues more than once").

### ii.  Galena's defenses in the securities class action

Some courts have stayed derivative actions based, in part, on arguments such as the Moving Defendants make here, that a plaintiff's prosecution of such actions could undermine the company's defense in related securities class actions. *See, e.g.*, *Brenner*, 2012 WL 252286, at \*5-6; *In re Stec, Inc. Derivative Litig.*, 2012 WL 8978155, at \*5-6 (C.D. Cal. Jan. 11, 2012); *In re Ormat*, 2011 WL 3841089, at \*4. Other courts have rejected such arguments and denied motions to stay. *See, e.g.*, *In re Am. Apparel, Inc. S'holder Derivative Litig.*, 2012 WL 9506072, at \*45-46 (C.D. Cal, July 31, 2012); *In re Apollo*, 2012 WL 79237, at \*2-3. The Court finds the reasoning rejecting such arguments to be more persuasive.

The argument that Galena's interests in the derivative action conflict with its interests in the securities class action is formalistic and sacrifices pragmatic common sense. As noted in *Apollo*, a corporation acts only through its officers and directors. *Apollo*, 2012 WL 79237, at \*2. If the officers and directors engaged in wrongdoing to the detriment of its shareholders, as is alleged in the securities class action, the corporation and any other culpable defendants may be liable to the shareholders. If, however, the officers and directors committed no wrongdoing, then they (and the corporation) will not be liable either to the shareholders directly in the securities

class action or to the shareholders indirectly in the derivative action. In the securities class action, the shareholder plaintiffs have to prove the wrongdoing of the officers and directors who were acting on behalf of Galena. In the derivative case, different shareholders, acting on behalf of Galena, must prove that the defendant officers and directors engaged in wrongdoing that harmed Galena.

Both the securities class action and this derivative action are in such early stages that it is not known whether the officers and directors committed any wrongdoing. Thus, any "conflict" exists only under a purely formalistic construct based on the fact that Galena is a nominal plaintiff in the derivative action and an actual defendant in the securities class action. *See In re Apollo*, 2012 WL 79237, at *2 ("While the concept that the corporation is a Defendant in one action (*Apollo II*—where Plaintiff shareholders claim the corporation itself committed wrongdoing) and the Plaintiff in another action (*Apollo III*—where the corporation is claiming its Officers and Directors engaged in wrongdoing) appears at first glance to be a conflict, an actual analysis of the possible conflict merely highlights the differences in the procedural posture of the two actions."). After the Court looks beyond this formalistic construct, "the Court cannot ascertain any direct conflict between the shareholders seeking damages from the corporation based on the wrongdoing of its Officers and Directors in [the securities class] action, and the shareholder seeking to protect the corporation's rights against the wrongdoing of its Officers and Directors in [the derivative] action." *Id.* Thus, the Moving Defendants fail to show a genuine conflict between Galena's defense in the securities class action and its interest in the derivative class action.

### iii. Discovery

The Moving Defendants have the better argument that Galena may be harmed if it must respond to discovery requests, including depositions, during the time that discovery is stayed in

the securities class action. Plaintiffs are correct that the discovery stay of the PSLRA does not

apply to federal derivative actions. But the fact that Galena may need to respond to written

discovery demands and provide depositions in this action and then later be subject to potentially

duplicative discovery in the securities class action if that case survives all motions to dismiss is a

possible harm to Galena. This harm, however, is readily mitigated by staying discovery in this

action until after the Court rules on all pending motions to dismiss in the securities class action.

*See, e.g.*, *In re Am. Apparel*, 2012 WL 9506072, at *46 ("While these factors weigh somewhat in

favor of a finding of prejudice here, any prejudice to defendants will be ameliorated by the fact

that the parties to this action have stipulated that all discovery will be stayed until pending

motions to dismiss the securities class action are resolved."); *cf. Cucci v. Edwards*, 2007

WL 3396234, at *2 (C.D. Cal. Oct. 31, 2007) (granting unopposed motion to stay derivative case

until resolution of the motion to dismiss the securities class action).

### b.  Potential harm to the Moving Defendants

The Moving Defendants also summarily argue that they will personally suffer harm in

their ability to defend themselves in the securities class action if Galena continues to be adverse

to the Moving Defendants in this action, without providing any further explanation or argument.

The Moving Defendants also argue that they will be harmed if discovery is allowed in this case

while it is stayed in the securities class action.

The Court's analysis of the potential harms asserted with respect to Galena applies to the

Director Defendants and Mr. Ahn, as well. The Court does not see a conflict in the directors' and

officers' ability to defend themselves in the securities class action if they are also required to

defend themselves from similar allegations of wrongdoing in this derivative action. Additionally,

as discussed above, the Court finds that the alleged potential harm relating to discovery will be

PAGE 18 – OPINION AND ORDER ON MOTION TO STAY

adequately mitigated by staying discovery in this case until the Court rules on the motions to dismiss in the securities class action.

### 3.   The orderly course of justice

The Moving Defendants also argue that allowing this consolidated derivative action to continue does not further the orderly course of justice because: (1) it would create duplicative litigation because the allegations and claims in this action are substantially similar to those in the securities class action; (2) the determination of the related securities class action will inform the advisability of continuing this derivative action—if the securities class action is dismissed or narrowed, Plaintiffs may have little basis for pursuing all or part of this derivative action; and (3) parallel proceedings will give rise to a risk of inconsistent judicial findings and rulings, including rulings relating to discovery disputes.

Plaintiffs respond that: (1) the actions differ procedurally and substantively and involve different parties, claims, legal theories, types of damages, and attorneys; (2) the derivative action is not merely a "tag-along case" seeking only damages arising out of the securities class action and the viability of the derivative case does not turn solely on the resolution of the securities class action; and (3) concerns regarding inconsistent judicial findings are mitigated by the fact that both the securities class action and the derivative case are before the same federal judge in the same court.

The Court concludes that the orderly course of justice is furthered by granting a stay of discovery until resolution of the pending motions to dismiss in the securities class action, and by not staying this action until final resolution of the securities class action. Concerns regarding inconsistent judicial rulings are mitigated by the fact that both the securities class action and this case are before the same judge. Concerns regarding duplicative litigation are mitigated by the temporary discovery stay and can be further mitigated by appropriate case management. Finally,

PAGE 19 – OPINION AND ORDER ON MOTION TO STAY

although some of the damages and issues in this case will be informed by resolution of similar issues in the securities class action, any significant concerns can be mitigated by the Court scheduling trial in the securities class action before any trial commences in this action.

**4. Conclusion**

The Moving Defendants have not carried their burden of showing that either they or Galena will suffer a clear case of hardship or inequity if the Court does not grant the requested stay. The Court does, however, find that the Moving Defendants and Galena might suffer some harm if discovery is permitted to continue in this case while discovery is stayed in the related securities class action, thereby supporting a temporary stay of discovery.

**CONCLUSION**

The Director Defendants' Motion to Stay (Dkt. 51) is GRANTED IN PART. Discovery in this case is stayed pending resolution of the motions to dismiss filed before this Court in the related securities class action.

**IT IS SO ORDERED**.

DATED this 4th day of February, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge