Christopher A. Slater, OSB # 97398
cslater@slaterross.com
Michael J. Ross, OSB # 91410
mjross@slaterross.com
SLATER ROSS
Sovereign Hotel, 4th Floor
710 S.W. Madison Street
Portland, Oregon  97205
Telephone: (503) 227-2024
Facsimile: (503) 224-7299

*Local Counsel for Plaintiffs*

[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | | |
|---|---|---|
| In re GALENA BIOPHARMA INC. DERIVATIVE LITIGATION | : : : : : : : : | Case No.: 3:14-cv-00382-SI LEAD<br><br>3:14-cv-00514-SI<br>3:14-cv-00516-SI<br>3:15-cv-01465-SI |
| This Document Relates To: ALL ACTIONS. | : : : : : : : | **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT** |

## TABLE OF CONTENTS

L.R. 7-1 CERTIFICATION ........................................................................................... 1

MOTION ...................................................................................................................... 1

I.      INTRODUCTION ............................................................................................. 1

II.     FACTUAL BACKGROUND ............................................................................ 4

        A.      Procedural History of the Action ......................................................... 4

                1.      The Oregon Action ................................................................... 4

                2.      The Delaware Action ................................................................ 6

                3.      The Oregon Action and Delaware Action Are Coordinated ..................... 7

                4.      Settlement Negotiations ............................................................ 8

III.    TERMS OF THE SETTLEMENT ..................................................................... 9

        A.      Financial Consideration ....................................................................... 9

        B.      Corporate Governance Reforms ........................................................... 9

IV.     THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE
        PROPOSED SETTLEMENT ........................................................................... 10

        A.      Legal Standard for Preliminary Approval ........................................... 10

        B.      The Settlement Satisfies the Standards for Preliminary Approval ...................... 12

                1.      The Settlement Confers Substantial and Material Benefits Upon
                        Galena and Its Stockholders ................................................... 12

                2.      The Settlement Was Reached Through Arms-Length Bargaining
                        with the Assistance of a Highly Competent and Experienced
                        Mediator ................................................................................ 13

                3.      The Settlement Appropriately Balances the Significant Risks of
                        Continued Litigation with the Benefits Conferred Upon Galena and
                        its Stockholders ..................................................................... 14

        C.      The Fee Award Provision Is Fair and Reasonable ............................... 16

V.      THE PROPOSED NOTICE TO CURRENT GALENA STOCKHOLDERS IS
        REASONABLE ............................................................................................... 17

VI.     PROPOSED SCHEDULE OF EVENTS ........................................................ 18

VII.    CONCLUSION ............................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Apollo Grp., Inc. Sec. Litig.*,
   No. 04-cv-2147, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008)................................15

*Arace v. Thompson*,
   No. 08 CIV. 7905 DC, 2011 WL 3627716 (S.D.N.Y. Aug. 17, 2011) ...................................18

*Arduini v. Hart*,
   774 F.3d 622 (9th Cir. 2014) ...................................................................10

*In re Atmel Corp. Derivative Litig.*,
   No. C-06-4592, 2010 WL 9525643 (N.D. Cal. Mar. 31, 2010) ...........................12, 13, 14, 16

*In re Chickie's & Pete's Wage and Hour Litig.*,
   No. 12-cv-6820, 2014 WL 911718 (E.D. Pa. Mar. 7, 2014) ...................................14

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)............................................................................16

*Ingram v. Coca-Cola Co.*,
   200 F.R.D. 685 (N.D. Ga. 2001)................................................................16

*Maher v. Zapata Corp.*,
   714 F.2d 436 (5th Cir. 1983) ..............................................................15, 16

*Mehling v. N.Y. Life Ins. Co.*,
   246 F.R.D. 467 (E.D. Pa. 2007)................................................................14

*In re MRV Commc'ns, Inc. Derivative Litig.*,
   No. 08-cv-03800, 2013 WL 2897874 (C.D. Cal. June 6, 2013)...........................10, 11, 13, 18

*Nat'l Rural Telecomm'ns Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ...............................................................14

*In re NVIDIA Corp. Derivative Litig.*,
   No. 06-06110, 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008)........................................ *passim*

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ...................................................................11

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ....................................................................16

*In re PMC-Sierra, Inc. Derivative Litig.*,
No. 06-05330 RS, 2010 U.S. Dist. LEXIS 5818 (N.D. Cal. Jan. 26, 2010) ...........................18

*In re Portal Software, Inc. Sec. Litig.*,
No. C 03 5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) ...................................11

*In re Rambus Inc. Derivative Litig.*,
No. 06-3513, 2009 WL 166689 (N.D. Cal. Jan. 20, 2009)............................................. *passim*

*Ryan v. Gifford*,
Civ. A. 2213-CC, 2009 WL 18143 (Del. Ch. Jan. 2, 2009)....................................................12

*Villanueva v. Morpho Detection, Inc.*,
No. 13-cv-05390, 2015 WL 4760464 (N.D. Cal. Aug. 12, 2015) ...................................13, 17

STATUTES, RULES AND REGULATIONS

8 Del. C. § 220 ...............................................................................................................................6

Fed. R. Civ. P. 23.1 (c) ............................................................................................... *passim*

OTHER AUTHORITIES

7 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 22.110 (4th ed.
2002) ......................................................................................................................................11

## **L.R. 7-1 CERTIFICATION**

Pursuant to Local Rule 7-1, counsel for all parties have conferred.  No party opposes the relief requested in the underlying Motion.

## **MOTION**

Plaintiffs Jeffrey Klein ("Klein"), David W. Fuhs ("Fuhs"), Pratik Rathore ("Rathore"), and Harold Spradling ("Spradling" and collectively with Klein, Fuhs and Rathore, "Plaintiffs"), respectfully submit this unopposed motion for an order preliminarily approving the proposed settlement of the above-captioned action (the "Motion").  This unopposed Motion is based on the following Memorandum of Points and Authorities submitted in support thereof; the pleadings, records, and papers on file in this action; such other papers as may be filed at or before the hearing on this Motion; and oral argument of counsel and any other matters that properly may be brought before the Court.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

The Action[1] is a shareholder derivative action brought on behalf Galena against certain current and former members of its Board and executive officers for alleged breaches of fiduciary duties, unjust enrichment and other violations of law.  Specifically, the Action alleges that the Individual Defendants secretly hired a stock promotion firm to artificially pump up the Company's stock price in order to later dump a significant portion of their Galena stock, including improperly granted spring-loaded stock options, when Galena stock was trading at historically high and artificially inflated prices.  The Action further alleges that the Individual Defendants improperly used valuable inside information to spring-load stock options to

---

[1]     Unless otherwise indicated, all capitalized terms shall have the same definitions as set forth in the Stipulation of Settlement dated January 20, 2016 (the "Stipulation").  The Stipulation is attached hereto as Exhibit 1.

themselves and in their haste to grant the options, failed to comply with the requirements of Delaware law. The Settling Defendants each denied any wrongdoing, and were prepared to vigorously defend themselves.

On January 20, 2016, after months of both in person and telephonic negotiations, including a mediation session with the Honorable Layn R. Phillips (Ret.) ("Judge Phillips"), the Parties entered into the Stipulation memorializing the Settlement of the Action.  The Settlement provides for substantial monetary relief to Galena, on behalf of which the Action was brought, and non-monetary relief in the form of comprehensive corporate governance reforms that benefit Galena and its stockholders.  The Settlement provides substantial financial relief to Galena, including:

- A $15 million cash payout to Galena by the Individual Defendants' Directors and Officers ("D&O") insurance carriers insurers;

- Forfeiture by former Galena Chief Executive Officer Mark Ahn of contractual severance payments in the form of stock options and salary totaling over $1.4 million;

- Forfeiture of all of the stock options granted to Defendants Hillsberg, Kriegsman, Nisi, Galliker, Chin and Ashton by Galena in November 2013, totaling 1.2 million shares; and

- Cancellation of any and all stock options previous granted to stock marketer Lidingo Holdings LLC ("Lidingo") in August 2013.

In addition, the Settlement calls for comprehensive corporate governance measures (the "Reforms") specifically tailored to the allegations in the Action, including modifications to the

Company's procedures for granting stock options and changes to the Company's internal insider trading policy.

Accordingly, in recognition of the substantial, valuable benefits conferred upon Galena as a result of the prosecution and settlement of the Action, the Board, in an exercise of its independent business judgment, has agreed in the Stipulation to pay an award of attorneys' fees and reimbursement of expenses to Plaintiffs' Counsel in the amount of $5 million to be paid by Galena's insurers (the "Fee Award"). *See* Stipulation ¶5.1. The Parties reached the Settlement with the  substantial assistance from the Honorable Layn R. Phillips (Ret.) ("Judge Phillips") and the Parties agreed to the Fee Award based on a mediator's proposal from Judge Phillips.

Plaintiffs submit the Motion to seek preliminary approval of the proposed Settlement. The Court should grant preliminary approval of the Settlement of this derivative Action because the Settlement provides substantial benefits to Galena and its stockholders, the Settlement was unquestionably negotiated at arm's-length by experienced counsel with the assistance of an experienced mediator, and the benefits of the Settlement substantially outweigh the risks of continued litigation.   In connection therewith, Plaintiffs request that the Court: (i) make a preliminary determination that the Settlement is within the range of possible approval; (ii) approve the proposed forms of notice of the Settlement to be disseminated to Current Galena Stockholders; and (iii) set a time and date for the final Settlement Hearing at which the full merits of the Settlement will be considered.  The Parties have agreed on two forms of notice: (1) a detailed Notice, which will be disseminated to Galena stockholders via SEC filing and posted on Galena's website; and (2) the Summary Notice, which will be published once on the national edition the *Investor's Business Daily*.  These forms of notice and means of dissemination have been approved by courts across the country in similar derivative litigation and will provide

Current Galena Stockholders with notice of the Settlement and an opportunity to voice any objection.  Accordingly, the Parties' notice plan satisfies Federal Rule of Civil Procedure 23.1(c) and due process and should be approved.

For these reasons and those set forth in greater detail herein, Plaintiffs respectfully request that the Court enter the agreed-upon proposed Preliminary Approval Order submitted herewith and attached to the Stipulation as Exhibit B which: (i) grants preliminary approval of the Settlement; (ii) directs that notice of the Settlement be given to Current Galena Stockholders; and (iii) schedules the Settlement Hearing at which the Court will consider final approval of the Settlement.

## II.    FACTUAL BACKGROUND

### A.    Procedural History of the Action

#### 1.    The Oregon Action

The Oregon Action was initiated in this Court in March 2014 when the Oregon Plaintiffs instituted actions on behalf of Galena alleging breaches of fiduciary duty against the Board which were later consolidated on April 11, 2014.  *See* Stipulation at 2.  Prior to the coordination among Plaintiffs, Defendants filed the Motion to Dismiss the Oregon Action on April 18, 2014, requesting that the case be transferred to the Delaware Court of Chancery based on a forum selection clause purportedly adopted by the Board.  *Id*.  Defendants thereafter withdrew the Motion to Dismiss.  *Id*.

At the parties' request, the Court set a briefing schedule for the Oregon Plaintiffs' amended complaint and Defendants' motion to dismiss.  *Id*.  On June 10, 2014, the Oregon Plaintiffs filed an amended complaint.  *Id*.  On August 11, 2014, Galena announced that the Special Committee, which had been appointed on February 17, 2014, had completed an investigation.  *Id*. at 2-3.  Galena also disclosed that the Board, on July 21, 2014, had appointed

Einhorn, who had served on the Special Committee, as a one-person SLC "in order to make any and all determinations with respect to the complaints and take all actions he deems necessary or appropriate regarding the claims made in the complaints." *Id*. at 3. Galena next filed the Motion to Stay on September 11, 2014, contending that the Oregon Action should be stayed so that the newly empowered SLC could investigate and decide whether to pursue the Oregon Plaintiffs' claims. *Id*. Oregon Plaintiffs opposed the Motion to Stay and argued*, inter alia*, that Einhorn lacked the independence required of a single member SLC because he was a member of the previously constituted Special Committee that completed an investigation into the alleged wrongdoing, and in that role he had already reached a conclusion in connection with the Oregon Plaintiffs' claims. *Id*.

On October 22, 2014, the Court denied the Motion to Stay. *Id*. Defendants filed a motion for reconsideration on October 28, 2014, which the Court also denied. *Id*.

The Court ordered that Defendants respond to the Oregon Plaintiffs' amended complaint within two weeks from the Court's denial of the motion for reconsideration. *Id*. Defendants again moved to stay the Oregon Action, filing the Second Motion to Stay, pending the resolution of the Federal Securities Action[2] and in deference to the Delaware Action. *Id*. Simultaneously, Defendants filed the Second Motion to Dismiss the Oregon Action which sought dismissal based on Defendants' arguments that plaintiffs failed to plead their allegations with the required level of particularity and to state a claim. *Id*.

On November 25, 2014, the Oregon Plaintiffs filed their opposition to the Second Motion to Stay, and on December 15, 2014, they filed their opposition to the Second Motion to Dismiss.

---

[2]    The Federal Securities Action refers to the case currently pending in the Federal Court captioned *In Re Galena Biopharma, Inc. Secs. Litig.*, No 14-cv-00367-SI (D. Or.), and alleges violations of the federal securities laws in connection with, among other things, the alleged DreamTeam Group stock promotion scheme.

*Id*. at 4.  The Court held oral argument in connection with both motions on January 23, 2015, and on February 4, 2015, entered orders and opinions granting in part and denying in part both the Second Motion to Dismiss and Second Motion to Stay.  *Id*.   In response to the Second Motion to Stay, the Court declined to stay the Oregon Action in favor of the related Delaware Action but decided to stay discovery pending the Court's decision on the motion to dismiss in the Federal Securities Action.  *Id*.  The Court also declined to dismiss the majority of the claims challenged in the Second Motion to Dismiss and gave the Oregon Plaintiffs leave to amend the claims that were dismissed.  *Id*.  The Oregon Plaintiffs filed their Verified Second Amended Consolidated Shareholder Derivative Complaint on March 6, 2015.  *Id*.

> 2.    The Delaware Action

In March 2014, Delaware Plaintiffs each made a demand pursuant to Section 220 to inspect certain of the Company's books and records related to stock option grants made to certain Galena insiders in November 2013, stock sales made by certain Galena insiders in January 2014, and related matters.  *Id*.  On March 18, 2014, Plaintiff Fuhs filed the 220 Action in the Delaware Court of Chancery to enforce his right to inspect the demanded books and records. On or about April 10, 2014, the parties executed a confidentiality agreement, and from April 14, 2014 to May 29, 2014, Galena produced on a rolling basis documents responsive to the 220 Demands.  *Id*.  Ultimately, Galena produced approximately 4,660 pages of documents. *Id*.

On June 20, 2014, the Delaware Plaintiffs filed a Verified Stockholder Derivative Complaint in the Delaware Court of Chancery on behalf of Galena and alleging breaches of fiduciary duty by Galena's officers and directors.  *Id*. at 5.

On August 12, 2014, Galena filed the Delaware Stay Motion, seeking to stay the litigation pending the results of the investigation of the SLC.  *Id*.  The Delaware Plaintiffs

stipulated to a stay of the Delaware Action until November 24, 2014.  *Id*.  On October 13, 2014, the Delaware Court of Chancery granted the Stay Order.  *Id*.  The Stay Order specifically reserved the Delaware Plaintiffs' right to seek to lift the stay if any other pending derivative actions were not also stayed.  *Id*.

Accordingly, on November 14, 2014, after the Court in the Oregon Action declined to stay the proceedings before it based on the SLC investigation (see discussion, *infra*), the Delaware Plaintiffs filed a motion seeking to vacate the stay of the Delaware Action under their reservation of rights in the Stay Order.  *Id*.  Based on subsequent rulings by the Court in the Oregon Action, the Delaware Plaintiffs agreed to voluntarily dismiss the Delaware Action and to file a complaint in this Court in order to coordinate their efforts with the Oregon Plaintiffs.  *Id*.

3.      The Oregon Action and Delaware Action Are Coordinated

After voluntarily dismissing the Delaware Action in February 2015, on August 4, 2015, Plaintiffs Fuhs and Spradling filed a Verified Stockholder Derivative Complaint and an Unopposed Motion to File Verified Stockholder Derivative Complaint Under Seal in order to consolidate their action with the Oregon Action.  *Id*.  The Court consolidated the pending actions on August 19, 2015, and, on August 31, 2015, the Court granted Plaintiffs' Unopposed Motion to File the operative Complaint.  *Id*. at 5-6.

The Complaint alleges, *inter alia*, that Galena's directors and senior executive officers unlawfully abused their positions as fiduciaries of the Company for their personal financial gain.  *Id*. at 6.  Specifically, the Complaint alleges that the Individual Defendants secretly manipulated the Company's stock price and artificially pumped it up in order to later dump a significant portion of their Galena stock, including improperly granted stock option awards, when Galena stock was trading at historically high and artificially inflated prices.  *Id*.  The Complaint also

alleges that the Individual Defendants improperly used valuable inside information to spring-load stock options to themselves, *i.e.*, options that are granted just prior to a company's release of material information reasonably expected to drive the market price of the shares higher, and in their haste to grant the options, failed to comply with the requirements of the Delaware General Corporation Law. *Id.* The Complaint alleges seven counts for: (1) breach of fiduciary duty for disseminating false and misleading information; (2) invalidity of stock options; (3) breach of fiduciary duty for insider selling and/or granting the spring-loaded stock option awards; (4) unjust enrichment in connection with insider selling and/or receipt of the spring-loaded stock options; (5) breach of fiduciary duty in connection with the enactment and attempted enforcement of the forum selection clause; (6) breach of fiduciary duty in connection with the excessive 2013 stock option awards and cash compensation to the outside directors; and (7) unjust enrichment in connection with the excessive 2013 stock option awards. *Id.*

### 4.    Settlement Negotiations

Plaintiffs issued a joint settlement demand on May 8, 2015 in advance of the Mediation, to be held before Judge Phillips. *Id.* As a precondition to attending the Mediation, Plaintiffs required Defendants to produce certain non-public documents, including documents produced to the SEC and reviewed by the Board's Special Committee and SLC. *Id.* at 7. As a result, Defendants produced nearly 24,000 documents to Plaintiffs. *Id.*

The full-day Mediation took place in New York City on September 19, 2015. *Id.* While the Mediation did not result in a resolution of the Action at that session, the Parties' submissions and other communications in connection with the Mediation served as the basis for subsequent negotiations, overseen by Judge Phillips. *Id.* With the substantial assistance of Judge Phillips, the Parties reached an agreement in principle to settle the Oregon Action and executed a term

sheet dated December 4, 2015.  *Id.*  The Parties subsequently negotiated and executed the Stipulation.  *Id.*

### III.   TERMS OF THE SETTLEMENT

#### A.   Financial Consideration

As a result of the Settlement, $15 million in cash will be paid to the Company by the Individual Defendants' D&O insurance carriers, on behalf of the Individual Defendants.  *See* Stipulation ¶2.1.  The foregoing amount shall be transferred to an escrow account for the Company within ten business days after preliminary approval of the Settlement.  *Id.*[3]

Additionally, the Settlement calls for the: (1) forfeiture by Defendant Ahn of $600,000 in annual salary, $250,000 in bonus, 1,181,250 stock options with an intrinsic value of approximately $503,062 (as of August 21, 2014, the date of the public announcement of Ahn's resignation), and health related costs valued between $24,000 and $30,000; (2)  forfeiture of all of the stock options granted to Defendants Hillsberg, Kriegsman, Nisi, Galliker, Chin, and Ashton in November 2013, totaling 1.2 million shares; and (3) cancellation of any and all outstanding stock options awarded to Lidingo in August 2013.  *Id.*  ¶¶2.2, 2.4.

#### B.   Corporate Governance Reforms

Further, as a result of Plaintiffs' prosecution and settlement of the Action, Galena has adopted or will adopt the Reforms, which are specifically tailored to address the allegations in the Action and to improve Galena's internal controls.  *Id.* ¶2.3, Exhibit A.   Specifically, the Reforms adopted or to be adopted by Galena in connection with the prosecution and settlement of the Action include, among others, changes to the Company's stock option granting practices

---

[3]  Defendants' insurance carriers were asserting defenses to coverage, making collection of insurance either to reimburse the Company for settling the Federal Securities Action or in the event of a judgment against any insured individual subject to doubt.

and modifications to the Company's insider trading policy. *See id*, Exhibit A. Defendants agree that the filing and prosecution of the Action was a primary cause and an important, material factor in the Company's enactment of the Reforms as well as those Reforms enacted after the Action was filed. *Id*.

Corporate governance reforms like those achieved here have formed the basis of settlements of countless stockholder derivative actions, as strong corporate governance is fundamental to a corporation's well-being and success. Indeed, "[c]ourts have recognized that corporate governance reforms such as those achieved here provide valuable benefits to public companies." *In re NVIDIA Corp. Derivative Litig.*, No. 06-06110, 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008) (citation omitted); *accord In re Rambus Inc. Derivative Litig.*, No. 06-3513, 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009) (recognizing that the "substantial benefits" of the derivative settlement which "provides long term remedial measures that are specifically designed to protect the shareholders.").

## IV.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT

### A.   Legal Standard for Preliminary Approval

"There is a strong policy favoring compromises that resolve litigation, and case law in the Ninth Circuit reflects that strong policy." *NVIDIA*, 2008 WL 5382544, at *2. "There is an overriding public interest in settling and quieting litigation." *Id*. (citations omitted). "Because shareholder derivative actions are 'notoriously difficult and unpredictable . . . settlements are favored.'" *Id*. (citation omitted).

Settlement and dismissal of a stockholder derivative action requires court approval. *See* Fed. R. Civ. P. 23.1(c); *Arduini v. Hart*, 774 F.3d 622, 637 (9th Cir. 2014); *In re MRV Commc'ns, Inc. Derivative Litig.*, No. 08-cv-03800, 2013 WL 2897874, at *2 (C.D. Cal. June 6,

2013).[4]  "[U]nder Ninth Circuit precedent, [the] Court must grant preliminary approval of a settlement, including approval of the notice to shareholders and the proposed method of notice, before having the final settlement hearing." *NVIDIA*, 2008 WL 5382544, at *2.  *See also MRV Commc'ns*, 2013 WL 2897874, at *2 ("[A]pproval of a derivative action appears to be a two-step process, similar to that employed for approving class action settlements, in which the Court first determines whether a proposed settlement deserves preliminary approval and then, after notice of the settlement is provided to class members, determines whether final approval is warranted.") (citations omitted).

"In order to grant preliminary [approval], the Court need only conclude that the settlement of the claims on the agreed upon terms is 'within the range of possible approval.'" *Id.* "To determine whether the Settlement is 'within the range of possible approval,' the Court must evaluate whether the Settlement is 'fair, reasonable, and adequate[.]'" *Id.*  "The preliminary determination establishes an initial presumption of fairness." *In re Portal Software, Inc. Sec. Litig.*, No. C 03 5138 VRW, 2007 WL 1991529, at *5 (N.D. Cal. June 30, 2007).  The district court must "balance a number of factors, including the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; ... the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; [and] the experience and views of counsel....'" *Rambus*, 2009 WL 166689, at *2.  To determine whether a proposed settlement is within the range of possible approval, the Court also ensures it is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)

---

[4] "The role of the court and the criteria considered in evaluating the adequacy and fairness of a derivative settlement are substantially the same as in the class action."  7 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 22.110, at 476 (4th ed. 2002).

As set forth below, based upon the record in this Action and the financial and corporate governance consideration achieved for the benefit of Galena and Current Galena Stockholders, these factors weigh in favor of granting preliminary approval of the Settlement.

**B.     The Settlement Satisfies the Standards for Preliminary Approval**

The Settlement should be preliminarily approved because it provides substantial benefits to Galena and Current Galena Stockholders, was negotiated at arm's-length and informed by substantial investigation and litigation, and appropriately balances the risks of litigation against the benefits of Settlement.   Accordingly, the Settlement falls within the range of possible approval.

**1.     The Settlement Confers Substantial and Material Benefits Upon Galena and Current Galena Stockholders**

"The principal factor to be considered in determining the fairness of a settlement concluding a shareholders' derivative action is the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest."  *In re Atmel Corp. Derivative Litig.*, No. C-06-4592, 2010 WL 9525643, at *12 (N.D. Cal. Mar. 31, 2010) (citation omitted).

The financial relief to the Company is substantial, immediate, and certain, and will be available for the Company much sooner than any potential judgment if the Action proceeded to trial.  *See, e.g., Ryan v. Gifford,* Civ. A. 2213-CC, 2009 WL 18143, at *10 (Del. Ch. Jan. 2, 2009) (finally approving settlement of derivative action which provided financial relief for the company, because financial relief "provides benefits to Maxim that are substantial and certain."); *see also NVIDIA*, 2008 WL 5382544, at *3 (preliminarily approving derivative settlement that provided for, among other things, "significant financial benefits that the Parties represents amount to more than $15.8 million," including a cash payment of $8 million). Moreover, corporate governance measures such as those achieved here also provide valuable benefits to

public companies.  *See NVIDIA*, 2008 WL 5382544, at *3; *Rambus*, 2009 WL 16689, at *3; *MRV Commc'ns*, 2013 WL 2897874, at *4.

As a result of the Action and the Settlement, Galena will receive financial relief in the form of $15 million in cash and recover forfeited stock options and salary from Lidingo and Defendants Ahn, Hillsberg, Kriegsman, Nisi, Galliker, Chin and Ashton which constitute a substantial benefit to Galena and its stockholders, as described herein.  Further, Galena has adopted or will adopt the Reforms.  The Settlement is an outstanding resolution for Galena of a case of substantial complexity and cost and it positions Galena to reap short and long-term benefits.  Thus, the Settlement is within the range of possible approval and should be preliminarily approved.

> **2.    The Settlement Was Reached Through Arms-Length Bargaining with the Assistance of a Highly Competent and Experienced Mediator**

A settlement enjoys a presumption of fairness if it "is recommended by … counsel after arm's-length bargaining."  *Villanueva v. Morpho Detection, Inc.*, No. 13-cv-05390, 2015 WL 4760464, at *6 (N.D. Cal. Aug. 12, 2015) (citation omitted).  Here, the Settlement was reached after extensive arm's-length negotiations between counsel for the Parties.  These negotiations began approximately 15 months ago, and included Plaintiffs sending Defendants two settlement demands, Plaintiffs' review of approximately 24,000 pages of non-public documents, a full-day in-person mediation session with Judge Phillips, a well-respected and experienced mediator who is well-versed in the field of complex shareholder litigation, and telephonic follow-up meetings with Judge Phillips.[5]  *See* Stipulation at 6-7.  This factor thus weighs in favor of preliminary

---

[5]    "Judge Phillips' participation weighs considerably against any inference of a collusive settlement."  *Atmel*, 2010 WL 9525643, at *13 (citations omitted).

approval of the proposed Settlement. *See, e.g.*, *NVIDIA*, 2008 WL 5382544, at *3 (derivative settlement preliminarily approved where the settlement "appears to be the result of good faith arm's-length bargaining."); *Mehling v. N.Y. Life Ins. Co.*, 246 F.R.D. 467, 473 (E.D. Pa. 2007) (settlement preliminarily approved where the parties engaged in "hard-fought and lengthy negotiation[s]" that lasted more than one year).[6]

Furthermore, the Parties did not begin negotiating the Fee Award until after all of the substantive terms of the Settlement were agreed upon. *See* Stipulation ¶5.1. This factor further demonstrates the fairness of the arm's-length Settlement because "the amount of attorneys' fees could not have affected the amount of Plaintiffs' recovery." *In re Chickie's & Pete's Wage and Hour Litig.*, No. 12-cv-6820, 2014 WL 911718, at *4 (E.D. Pa. Mar. 7, 2014).

### 3. The Settlement Appropriately Balances the Significant Risks of Continued Litigation with the Benefits Conferred Upon Galena and Current Galena Stockholders

The uncertainties and vagaries of further litigation of the Action demonstrate that the proposed Settlement is within the range of approval, and that Plaintiffs' Motion should be granted. Although Plaintiffs believe that their claims were meritorious, there existed significant risks in continuing to prosecute the Action. For example, although Defendants' motions to dismiss were denied liability was by no means a foregone conclusion. Continued litigation would be extremely complex, costly, and lengthy. Document discovery would need to be completed, depositions would need to be taken, experts would need to be designated, and expert discovery conducted. Defendants' expected motions for summary judgment would have to be

---

[6] Moreover, the arm's-length negotiation of the Settlement was conducted by highly-qualified counsel with extensive experience in stockholder derivative litigation which militates in favor of preliminarily approving the Settlement. *See, e.g.*, *Nat'l Rural Telecomm'ns Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts underlying litigation."); *Atmel*, 2010 WL 9525643, at *13 ("the involvement of multiple counsel from different firms suggests a lack of collusion.").

briefed and argued and a trial would have to be held.  Even if liability were established, the amount of recoverable damages would still have posed significant issues and would have been subject to further litigation.  *See, e.g.*, *NVIDIA*, 2008 WL 5382544, at *3 (preliminarily approving the derivative settlement after balancing the risks faced by plaintiffs and defendants). Plaintiffs' Counsel also considered the best interests of Galena, as the Action is brought on its behalf, including the risks that on-going litigation could result in loss or substantial diminution of available D&O insurance and financial hardship to Galena with risk that the Individual Defendants (absent insurance) would be unable to satisfy fully any judgment that might be entered in the Action and that the Defendants would also be unable to settle the related Federal Securities Action.  *See* Stipulation §II.

It is also clear that even a victory at trial is no guarantee that the judgment would ultimately be sustained on appeal or by the trial court.  For example, in *In re Apollo Grp., Inc. Sec. Litig.*, No. 04-cv-2147, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008), the court on a motion for judgment as a matter of law overturned a jury verdict of $277 million in favor of stockholders based on insufficient evidence presented at trial to establish loss causation.  Add to these post-trial and appellate risks, the difficulty and unpredictability of a lengthy and complex trial – where witnesses could suddenly become unavailable or the fact finder could react to the evidence in unforeseen ways – and the benefits of the Settlement become all the more apparent. The proposed Settlement eliminates these and other risks of continued litigation, including the very real risk of no recovery after several more years of litigation, while providing Galena with substantial benefits immediately.  *See*, *e.g.*, *Maher v. Zapata Corp.*, 714 F.2d 436, 466 (5th Cir. 1983) (derivative settlement approved where "the parties' conclusion that any possible benefit to

Zapata from pursuing the causes of action would be more than offset by the additional cost of litigation was based on an intelligent and prudent evaluation of their case").[7]

### C.    The Fee Award Is Fair and Reasonable

The details and reasons supporting the Fee Award will be fully addressed in connection with briefing on the Plaintiffs' motion for final approval of the Settlement.  The Board, in an exercise of its independent business judgment, has agreed to pay the Fee Award to Plaintiffs' Counsel which will, if approved by the Court, be paid by Galena's insurers.  *See* Stipulation ¶5.1.  The Parties agreed to the Fee Award by accepting a mediator's proposal made by Judge Phillips.  *Id*.  The U.S. Supreme Court has endorsed this type of consensual resolution of attorneys' fees as the ideal towards which litigants should strive.  *See Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee"); *see also Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001) (where, as here, there is no evidence of collusion and no detriment to the parties, the court should give "substantial weight to a negotiated fee amount.").

The Fee Award is appropriate in light of (a) the substantial financial relief achieved in the Settlement and (b) the Reforms.  *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 at 379 (9th Cir. 1995) (approving attorneys' fee award based on financial relief and non-monetary benefits achieved in a derivative settlement). Even putting aside the financial relief, this Circuit has recognized that corporations (and stockholders) receive substantial benefits from changes in corporate governance or policies that result from stockholder litigation.  *See Atmel*, 2010 WL

---

[7]    *Maher* recognized that the avoidance of further litigation expenses "both monetarily in the form of litigation fees and expenses, and nonmonetarily in the form of disruption and distraction of management, and threatened impairment of the Corporation's credit and goodwill, are important and valid reasons for seeking a settlement, and may warrant its approval." *Maher*, 714 F.2d at 467.

9525643, at *11 ("the Court concludes that the agreed-upon amount of attorneys' fees and costs

… is reasonable in light of the overall benefit of the settlement to Atmel and its shareholders.");

*Rambus*, 2009 WL 166689, at *3 ("Attorneys who prosecute a shareholder derivative action that

confers 'substantial benefit' on the corporate are entitled to an award of attorneys' fees …

[C]ourts consistently have approved attorneys' fees and expenses in shareholder actions where

the plaintiffs' efforts resulted in significant corporate governance reforms but no monetary

relief.") (citations omitted).

## V.    THE PROPOSED NOTICE TO CURRENT GALENA STOCKHOLDERS IS REASONABLE

The purpose of providing stockholders notice of a proposed settlement is to "apprise

interested parties of the pendency of the action and afford them an opportunity to present their

objections." *Villanueva*, 2015 WL 4760464, at *7 (citation omitted).  The Parties have agreed,

subject to Court approval, that Galena will notify Current Galena Stockholders of the proposed

Settlement by: (i) causing a Form 8-K to be filed with the SEC that contains the contents of the

Summary Notice, attaching a copy of the Stipulation to the 8-K and providing a link in the 8-K

to the Stipulation and Notice that shall be posted on the Investor portion of Galena's website; and

(ii) publishing the Summary Notice one time in *Investor's Business Daily*.  *See* Stipulation ¶3.2.

The proposed forms of notice (attached as Exhibits C and D to the Stipulation) set forth,

*inter alia*, the date and location of the final Settlement Hearing, the Parties' contentions, the

reasons for the Settlement, and the procedure for objecting to the Settlement, including the Fee

Award.  *See* Stipulation, Exhibits C & D.  Accordingly, Plaintiffs respectfully submit that the

proposed forms of notice fully satisfy Fed. R. Civ. P. 23.1(c) and due process requirements, as

they will fairly and reasonably apprise Current Galena Stockholders of the essential terms of the

Settlement and afford them an opportunity to present any objections thereto.  Indeed, numerous

courts have approved similar forms of notice and notice distribution plans in connection with settlements of other derivative actions, thus confirming that the Parties' proposed notice plan here is appropriate. *See, e.g.*, *Arace v. Thompson*, No. 08 CIV. 7905 DC, 2011 WL 3627716, at *4 (S.D.N.Y. Aug. 17, 2011) (approving notice of proposed derivative settlement by publication in *Investor's Business Daily* and on company's website); *Rambus*, 2009 WL 16689, at *2 (approving settlement where notice was published on company website and in a press release carried on *Business Wire*, and filed in an 8-K with the SEC); *MRV Commc'ns*, 2013 WL 2897874, at *1 (approving notice filed as an attachment to a Form 8-K, published on company website, and published for one day in *Investor's Business Daily*); *In re PMC-Sierra, Inc. Derivative Litig.*, No. 06-05330 RS, 2010 U.S. Dist. LEXIS 5818, at *4 (N.D. Cal. Jan. 26, 2010) (approving notice via filing with the SEC, posting on company's website, and single day publication in the national edition of *Investor's Business Daily*).

## VI.   PROPOSED SCHEDULE OF EVENTS

Plaintiffs, with the consent of the Defendants, request that the Court: (i) grant preliminary approval of the Settlement; (ii) approve, as to form and content, the Notice and Summary Notice, annexed as Exhibits C and D to the Stipulation; (iii) hold that the filing of a Form 8-K attaching the Notice, publication of the Notice on the Company's website, and publication of the Summary Notice once in the national edition of *Investor's Business Daily* complies with due process and the rules of this Court, is the best notice practicable under the circumstances, and shall constitute due and sufficient notice for all purposes to Current Galena Stockholders; and (iv) set a date for the Settlement Hearing.  The Parties propose the following schedule:

| | |
|---|---|
| Summary Notice issued once on the national edition of *Investor's Business Daily* | Within 10 business days after entry of the Preliminary Approval Order |
| Filing of Notice via From 8-K with the SEC | Within 10 business days after entry of the Preliminary Approval Order |

| Posting of Notice on Galena's website | Within 10 business days after entry of Preliminary Approval Order |
|---|---|
| Last day for counsel for Galena to file appropriate affidavit with respect to preparation and dissemination of Notice and Summary Notice | At least 10 business days prior to Settlement Hearing |
| Filing of all papers in support of the Settlement, including the Fee Award | 28 calendar days prior to the Settlement Hearing |
| Last day for Current Galena Stockholders to comment on the Settlement | 14 business days prior to the Settlement Hearing |
| Filing of all reply papers in support of the Settlement, including responses to objections, if any | 7 calendar days prior to the Settlement Hearing |
| Final Settlement Hearing | Approximately 45 days after the Notice Date[8] |

## VII. CONCLUSION

The Settlement is an outstanding resolution of a case of substantial complexity and costs. Accordingly, Plaintiffs respectfully request that the Court preliminarily approve the Settlement and the issuance of the Notice and Summary Notice, and schedule the Settlement Hearing to consider final approval of the Settlement.

Dated: January 22, 2016

**SLATER ROSS**

*/s/ Christopher A. Slater*
Christopher A. Slater, OSB # 97398
Michael J. Ross, OSB # 91410
Sovereign Hotel, 4th Floor
710 S.W. Madison Street
Portland, Oregon 97205
Telephone: (503) 227-2024
Facsimile: (503) 224-7299
cslater@slaterross.com
mjross@slaterross.com
*Local Counsel for Plaintiffs*

**THE WEISER LAW FIRM, P.C.**
Robert B. Weiser
Brett D. Stecker

---

[8] Plaintiffs are prepared to coordinate a mutually agreeable date with the Court's Deputy Clerk for inclusion in the Preliminary Approval Order prior to entry.

James M. Ficaro
22 Cassatt Avenue, First Floor
Berwyn, PA 19312
Telephone: (610) 225-2677
Facsimile: (610) 408-8062
rw@weiserlawfirm.com
bds@weiserlawfirm.com
jmf@weiserlawfirm.com

**THE WEISER LAW FIRM, P.C.**
Kathleen A. Herkenhoff
CA Bar ID 168562
12707 High Bluff Drive, Suite 200
San Diego, CA 92130
Telephone:  (858) 794-1441
Facsimile:  (858) 794-1450
kah@weiserlawfirm.com

**HYNES KELLER & HERNANDEZ, LLC**
Michael J. Hynes
Ligaya Hernandez
Hynes Keller & Hernandez, LLC
1150 First Avenue, Suite 501
King of Prussia, PA 19406
Telephone: (610) 994-0292
Facsimile: (914) 752-3041
mhynes@hkh-lawfirm.com
lhernandez@hkh-lawfirm.com

**FEDERMAN & SHERWOOD**
William B. Federman
Sara E. Collier
10205 N Pennsylvania Ave
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
wbf@federmanlaw.com
sec@federmanlaw.com

*Counsel for Plaintiffs Klein and Rathore*


**PRICKETT, JONES & ELLIOTT, P.A.**
Michael Hanrahan
Paul A. Fioravanti, Jr.
Kevin H. Davenport

20

1310 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 888-6500
Facsimile: (302) 658-8111
Mhanrahan@prickett.com
PAFioravanti@prickett.com
KHDavenport@Prickett.com

**KESSLER TOPAZ**
   **MELTZER & CHECK, LLP**
Eric L. Zagar
Robin Winchester
Matthew A. Goldstein
280 King of Prussia Road
Radnor, Pennsylvania 19087
Telephone: (610) 667-7706
Facsimile: (267) 948-2512
ezagar@ktmc.com
rwinchester@ktmc.com
mgoldstein@ktmc.com

**GRANT & EISENHOFER P.A.**
Stuart Grant
Cynthia Calder
123 Justison Street
Wilmington, DE 19801
Telephone: (302) 622-7000
Facsimile: (302) 622-7100
sgrant@gelaw.com
ccalder@gelaw.com

**GARDY & NOTIS, LLP**
James S. Notis
Kira German
Tower 56
126 East 56th Street, 8th Floor
New York, NY 10022
Telephone: (212) 905-0509
Facsimile: (212) 905-0508
jnotis@gardylaw.com

**SQUITIERI & FEARON LLP**
Lee Squitieri
32 East 57th Street, 12th Floor
New York, NY 10022

21

Telephone: (212) 421-6492
Facsimile: (212) 421-6553
lee@sfclasslaw.com

*Counsel for Plaintiffs Fuhs and Spradling*