Christopher A. Slater, OSB # 97398
cslater@slaterross.com
Michael J. Ross, OSB # 91410
mjross@slaterross.com
SLATER ROSS
Sovereign Hotel, 4th Floor
710 S.W. Madison Street
Portland, Oregon  97205
Telephone: (503) 227-2024
Facsimile: (503) 224-7299

*Local Counsel for Plaintiffs*

[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | | |
|---|---|---|
| In re GALENA BIOPHARMA INC. DERIVATIVE LITIGATION | : : : : : : : | Case No.: 3:14-cv-00382-SI LEAD<br><br>3:14-cv-00514-SI<br>3:14-cv-00516-SI<br>3:15-cv-01465-SI |
| This Document Relates To: ALL ACTIONS. | : : : : : : : : : : : : | **REPLY IN FURTHER SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENT, AWARD OF AGREED-TO ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS AND IN RESPONSE TO THE AMICUS BRIEF FILED BY THE SECURITIES ACTION PLAINTIFFS** |

Plaintiffs Jeffrey Klein, David W. Fuhs, Pratik Rathore, and Harold Spradling (collectively, "Plaintiffs" or "Derivative Plaintiffs") respectfully submit this reply (the "Reply") in further support of their unopposed motion for an order finally approving the proposed settlement of the above-captioned stockholder derivative action (the "Action" or "Derivative Action"), the award of agreed-to attorneys' fees and reimbursement of expenses pursuant to Federal Rule of Civil Procedure 54, and incentive awards for certain of the Plaintiffs (the "Motion"), and in response to the Amicus Brief of the Federal Securities Action plaintiffs (the "Amicus Brief") [ECF No. 120].[1]

## I.    PRELIMINARY STATEMENT

Following the dissemination of the Notice[2] of the settlement of this Action (the "Settlement" or "Derivative Settlement") to Current Galena Stockholders as ordered by this Court, which included publication of the Settlement in a Current Report on Form 8-K filed with the U.S. Securities and Exchange Commission ("SEC"), via press release, in three different newspapers, and posting on Galena's website, ***no Galena stockholder*** has objected to the Settlement, the Fee Award, or the Incentive Awards. Plaintiffs respectfully submit that the complete lack of opposition to the Settlement, the Fee Award, and the Incentive Awards is significant (if not dispositive), and strongly supports that the Settlement, Fee Award, and Incentive Awards are fair, reasonable, and adequate and should be finally approved.

Indeed, as of the April 7, 2016 objection deadline (and to date), the only submission made in this Action by any non-party is the "Amicus Brief" filed by one of the law firms serving

---

[1] This Reply does not respond to the issues raised in the Court's Order dated April 12, 2016 (the "April 12 Order"). In accordance with the April 12 Order, Plaintiffs and Defendants shall jointly submit a response to the April 12 Order to this Court on April 18, 2016.

[2] Unless otherwise indicated, all capitalized terms shall have the same definitions as set forth in the Amended Stipulation and Agreement of Settlement dated February 1, 2016 (the "Stipulation") and filed with the Court on the same day.

as co-lead counsel in the related Federal Securities Action.[3]  This highly irregular filing, which does **not** object to the Settlement, purports to "clarify" the total collective amount of the cash contributions by the D&O insurance carriers in the settlements of this Action and in the Federal Securities Action.  The assertions made in the Amicus Brief, however, are belied by Galena's public filings with the SEC describing the settlements of this Action and the Federal Securities Action, the Stipulation in this Action, and the actual payments made by the D&O insurance carriers.  Accordingly, to the extent this Court considers the Amicus Brief at all, the Court should accord it no weight in evaluating the Settlement of this Action, which is eminently fair, reasonable and adequate and should be finally approved in all respects.  Nor should the Amicus Brief be considered in determining the Fee Award (which is the real purpose of the Amicus Brief).  The agreed-to Fee Award: (i) is fully supported by the substantial benefits of the Settlement; (ii) is the product of mediation and a mediator's proposal accepted by the Parties; (iii) is not opposed by any Galena stockholder; and (iv) is being paid on top of the $15 million cash payment to Galena and, therefore, will in no way reduce the financial benefits to the Company.

---

[3] On April 7, 2016, Jonathan Horne, a member of The Rosen Law Firm, P.A., one of the law firms serving as co-lead counsel in the Federal Securities Action, sent an email to Plaintiffs' Counsel in this Action at 3:59 p.m. EST informing counsel of the Federal Securities Action plaintiffs' intent to file an amicus brief and asking for Plaintiffs' Counsel's position on such filing by the close of business that day.  A draft of the proposed amicus brief was attached to a subsequent email sent at 5:40 p.m. EST.  While Plaintiffs' Counsel did not consent to its filing, the Amicus Brief which was actually filed was not the same as the draft attached to Mr. Horne's email.

## II.    ARGUMENT

### A.    No Current Galena Stockholder Has Objected to the Settlement, the Agreed-To Fee Award, of the Incentive Awards

On March 31, 2016, Plaintiffs filed their unopposed Motion.  In accordance with the terms of this Court's Preliminary Approval Order entered on February 4, 2016: (i) on February 16, 2016, Galena filed with the SEC a Current Report on Form 8-K that contains the contents of the Summary Notice, attached to the 8-K a copy of the Stipulation, and provided in the 8-K a link to the Stipulation and the Notice that is posted on the Investor Relations portion of Galena's website; (ii) on February 16, 2016, Galena issued a press release that contains the contents of the Summary Notice; and (iii) on February 17, 2016, Galena published a copy of the Summary Notice one time in *Investor's Business Daily*, *The Oregonian*, and *The Wall Street Journal*.  *See* Declaration of Thomas J. Knapp Regarding Publication of Notice and Summary Notice, ¶¶3-7 [ECF No. 119].  Pursuant to the terms of the Preliminary Approval Order, all objections to the Settlement, the agreed-to Fee Award, and/or the Incentive Awards were due by April 7, 2016. *See* ECF No. 115, ¶6.  No objections were timely submitted as of the April 7, 2016 objection deadline, and indeed, to date, neither Plaintiffs' Counsel nor Defendants' counsel have received even a single objection to the Settlement, the Fee Award, or the Incentive Awards.

One factor the Ninth Circuit considers in determining whether to approve a derivative settlement is the reaction of the stockholders to the proposed settlement.  *See In re NVIDIA Corp. Derivative Litig.*, 2009 U.S. Dist. LEXIS 24973, at *8-9 (N.D. Cal. Dec. 22, 2008) (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.3d 615, 625 (9th Cir. 1992)); *In re MRV Commc'ns, Inc. Derivative Litig.*, 2013 WL 2897874, at *2 (C.D. Cal. June 6, 2013) (citation

omitted).  Galena presently has over 181 million shares outstanding[4] held by thousands, if not

tens of thousands, of individual and institutional investors.[5]  The extremely favorable reaction of

Current Galena Stockholders further supports the fairness and reasonableness of the Settlement,

the agreed-to Fee Award, and the Incentive Awards.  *See, e.g.*, *Roberti v. OSI Sys., Inc.*, 2015

WL 8329916, at *5 (C.D. Cal. Dec. 8, 2015) ("By any standard, the lack of objections of the

Class Members favors final approval.") (citation omitted); *MRV*, 2013 WL 2897874, at *5

(finally approving derivative settlement where "Plaintiffs [were] not aware of a single objection

to any aspect of the Settlement" and finding that factor "weighs in favor of final approval"); *In re

Rambus Inc. Derivative Litig.*, No. 06-3513, 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009)

(stating that shareholders' reaction to a proposed settlement "is perhaps the most significant

factor to be weighed in considering its adequacy" and that "[g]iven the benefits to Rambus and

the lack of objections, the Court finds the Settlement to be fair, adequate, reasonable, and a

sound alternative to continued litigation."); *Arnett v. Bank of America, N.A.*, 2014 WL 4672458,

at *10 (D. Or. Sept. 18, 2014) (approving settlement where four objections were filed); *Zografos

v. Qwest Commc'ns Co., LLC*, 2013 WL 3766561, at *4 (D. Or. July 11, 2013) ("The absence of

objections by class members to Settlement Class Counsel's fee-and-expense request further

supports finding it reasonable").

Accordingly, Plaintiffs respectfully submit that the lack of objections by Current Galena

Stockholders weighs strongly in favor of final approval of the Settlement, including the agreed-to

Fee Award and the Incentive Awards.

---

[4]  *See* http://finance.yahoo.com/q/ks?s=GALE+Key+Statistics, the Yahoo! finance page for
Galena.

[5] Institutional investors are now more active than ever, and they have the financial resources and
expertise to pursue objections in stockholder representative actions if they feel it is warranted.
Here, none have stepped forward.

### B.    The Amicus Brief is Irrelevant and Misleading

On April 7, 2016, one of the co-lead counsel in the Federal Securities Action took the highly unusual step of filing the Amicus Brief in this Action, purportedly in order to "to clarify for the Court how and when each settlement was achieved."  *See* ECF No. 120, at p.2.  Notably, the Amicus Brief does not challenge the fairness, reasonableness, or adequacy of the Settlement, the Fee Award, or the Incentive Awards.  Instead, the Amicus Brief makes assertions purportedly describing the negotiations leading to the Settlement, the Settlement terms, and the manner in which certain funds were paid by the D&O insurance carriers.  These assertions are inconsistent with Galena's public filings and various documents memorializing the terms of the settlements of the Derivative Action and the Federal Securities Action, and they are contrary to the payments actually made by the D&O insurance carriers in accordance with the Stipulation in this Action.

The record plainly demonstrates that the respective settlements of the Derivative Action and the Federal Securities Action are the products of global mediation efforts by the parties to those cases.  Indeed, the parties to both actions retained a highly experienced mediator, Judge Phillips, to simultaneously conduct the confidential mediation discussions.  From the outset, it was understood that the settlements of both cases were cross-conditioned on one another, *i.e.*, the insurance carriers would only agree to pay their respective negotiated amounts of insurance proceeds if **both** the Federal Securities Action plaintiffs and the Derivative Plaintiffs agreed to settlements in their respective actions.[6]  As a result of those coordinated and yet separate and

---

[6] *See* Stipulation at ¶6.1 ("The Effective Date of the Stipulation shall be conditioned on the occurrence of all of the following events…Final approval of the partial settlement of the Federal Securities Action involving defendants Galena, Ahn, Schwartz, Dunlap, Kriegsman, Chin, Galliker, Nisi, Hillsberg and Remy Bernarda[.]") [ECF No. 36-1]; Federal Securities Action Amended Stipulation of Settlement at ¶48 ("The Effective Date of the Settlement Stipulation… shall be the date on which all the following conditions of settlement shall have occurred…Final approval of settlement of all the Derivative Actions[.]") [Federal Securities Action, ECF No. 170].

distinct settlement negotiations, on December 3, 2015, the parties in both the Derivative Action

and the Federal Securities Actions reached settlements, with the substantial assistance of Judge

Phillips.   These settlements were reached following a joint, in-person mediation session on

September 19, 2015, and after extensive discussions in the months following the formal

mediation session.[7]

      With respect to the Derivative Settlement, the D&O insurance carriers agreed to make a

$15 million payment to Galena.   Galena, in turn, then agreed to use the $15 million to fund a

portion of the Federal Securities Action settlement.   This payment ensured that Galena would not

sustain further economic harm by being forced to fund the entire amount of the settlement of the

Federal Securities Action.   Indeed, the Company's Current Report on 8-K filed with the SEC on

December 4, 2015, states (in pertinent part):

> On December 3, 2015, the Company agreed in principle to resolve and settle the
> consolidated shareholder derivative action, captioned *In re Galena Biopharma,
> Inc. Derivative Litigation*, Civil Action No. 3:14−cv−00382−SI, currently
> pending in the United States District Court for the District of Oregon against the
> Company and/or certain of its current and former officers and directors. The
> agreement in principle was reached in connection with a voluntary mediation held
> by Judge Layn Phillips to explore a possible settlement of both the shareholder
> derivative action and a putative securities class action that is discussed below. The
> settlement will not become effective until approved by the Court. The settlement
> includes a payment of $15 million in cash by the Company's insurance carriers,
> which the Company will use to fund a portion of the class action settlement.[8]

      Consistent with the foregoing, the Stipulation in the Derivative Action requires the D&O

insurance carriers to make a payment of $15 million in cash ***to Galena*** following preliminary

---

[7] The Stipulation states that the term sheet in the Derivative Action was fully executed as of
December 4, 2015, as that is the date on which counsel for certain of the Individual Defendants
executed the term sheet.   Counsel for Galena, defendant Ahn, and Plaintiffs, however, each
executed the term sheet on December 2, 2015.

[8]     *See*     https://www.sec.gov/Archives/edgar/data/1390478/000139047815000057/gale-
20141231x8xk.htm.   Notably, the Company issued this disclosure even before the respective
stipulations of settlement were signed in either case.

approval of the Derivative Settlement.  The D&O insurance carriers in fact made that required payment to Galena on March 2, 2016. *See* Declaration of Thomas J. Knapp in Support of Final Approval of Settlement (attached hereto as Exhibit A) at ¶3.

The assertion in the Amicus Brief that the Federal Securities Action plaintiffs were and are "solely responsible" for the $15 million payment by the D&O insurance carriers is demonstrably inaccurate.  The only document upon which the Federal Securities Action plaintiffs rely – their amended stipulation of settlement – is inconsistent with all of the other documents and actual events.  Indeed, it would be impossible for the plaintiffs to the Federal Securities Action to accurately claim or assign a specific percentage of causation for the insurance amounts secured in the respective settlements, as these amounts were determined as part of global settlement negotiations.  The role of the Derivative Plaintiffs in ensuring that such payment was made by the D&O insurance carriers is supported by the history of the settlement negotiations.  Counsel for the Derivative Plaintiffs communicated their confidential settlement demands to the Mediator, with the goal of maximizing the amount of insurance proceeds available to Galena while simultaneously ensuring that Galena itself paid the smallest amount possible as part of a settlement of the Federal Securities Action.[9]  Simultaneously, the Federal Securities Action plaintiffs were separately communicating their own confidential settlement demands to the Mediator which, presumably, were aimed at maximizing the total amount of cash to be paid to the class of Galena stockholders, regardless of whether that amount was to be paid by Galena's D&O insurance carriers or by Galena itself.  Neither the Derivative Plaintiffs nor the Federal Securities Action plaintiffs were ever privy to each other's respective settlement

---

[9] At least in part as a result of Plaintiffs' Counsel's efforts in this regard, Galena is paying only $2.3 million "out of pocket" in order to resolve the Federal Securities Action.  Due to Galena's rather tenuous publicly-reported cash position, this was and is a substantial benefit to the Company.

discussions, and thus, neither set of plaintiffs could attest to the relative amount of "credit" each group deserves for achieving the $15 million payment.   To even attempt to do so, would be very much akin to unscrambling the proverbial egg.  It is clear, however, that the Federal Securities Action plaintiffs were not and are not "solely responsible" for obtaining the $15 million insurance payment to Galena that constitutes part of the financial consideration in the Derivative Settlement.

       **C.**       **The Settlement is Fair, Reasonable and Adequate**

The primary issue for this Court's consideration in connection with the Motion is whether the Derivative Settlement is fair, reasonable and adequate, and it undoubtedly is.  In addition to the $15 million cash payment made to Galena by the D&O insurance carriers, the Settlement includes additional financial relief for Galena's benefit, including: (i) the cancellation of 1.2 million challenged stock options granted to the director defendants; (ii) the forfeiture of over $800,000 of contractual severance payments and over 1.1 million stock options with an intrinsic value of approximately $503,062 by defendant Ahn, Galena's former Chief Executive Officer; (iii) cancellation of the outstanding stock options awarded to Lidingo in August 2013; and (iv) the agreed-to Fee Award of $5 million, which is being paid on top of the other financial benefits. In total, the financial benefits of the Settlement alone are collectively worth over $21.3 million. As a result of the Settlement and the efforts of Plaintiffs and their counsel, the alleged improperly-granted options received by the director defendants have been cancelled, which fully remedies the director defendants' alleged breaches of duty in connection with the option grants by eliminating any unjust enrichment they received, and Galena has received significant financial consideration which will enable Galena to fund nearly all of the Federal Securities Action settlement.

As part of the Settlement, Galena is also required to implement a comprehensive series of important and meaningful corporate governance reforms. *See* Stipulation, Exhibit A. These negotiated reforms are directly related and responsive to the allegations and claims asserted in the Action. Specifically, the option granting reforms will allow Galena to continue using stock options to incentivize and reward performance of Galena employees, while ensuring that the award process is governed by specific criteria which are transparent, *i.e.*, granted on pre-set dates, disclosed to stockholders and in accord with proper granting practices. The various other reforms at both the Board and management levels will cause Galena to be a better-governed company with stronger internal controls and greater independent oversight, and are designed to make Galena's directors and officers more effective representatives of the stockholders. These reforms confer substantial benefits upon Galena and Current Galena Stockholders and, importantly, could not have been obtained even if Plaintiffs prevailed at trial.[10]

Finally, the agreed-to Fee Award of $5 million in this Action is clearly supported by Plaintiffs' Counsel's significant results achieved for the benefit of the Company through their investigation, litigation and negotiation of the Settlement. The Fee Award, which was the product of a "mediator's proposal" accepted by the parties and which was only negotiated with the substantial assistance of Judge Phillips after the principal terms of the Settlement were agreed-to, will be paid by the D&O insurance carriers, and is being paid separate and apart from the $15 million payment to the Company. The Fee Award is also firmly supported by Galena's

---

[10] Although the confidential settlement negotiations are protected by the mediation privilege, Plaintiffs' Counsel would represent that the insurance coverage issues – both with respect to various exclusions under certain policies and the timing of coverage related to claims made – were substantial. Plaintiffs here played a role in assisting to resolve those insurance coverage issues. *See* Motion at 21-22.

Board, which has agreed to the Fee Award "in the exercise of its independent business judgment." *See* Stipulation at ¶5.1.

The Fee Award is reasonable when considering the percentage of the Fee Award compared to the gross value of the financial consideration as part of the Settlement as well as the value of the substantial governance reforms which ***alone*** support the Fee Award.  *See* Plaintiffs' Motion at Section V.B [ECF No. 45].  Indeed, as the Honorable Chief Judge Ann Aiken held in *Zografos*, "[u]nder the percentage-of-the-fund method, it is appropriate to base the percentage on the gross cash benefits available for class members to claim, ***plus*** the additional benefits conferred on the class by the Settling Defendants' separate payment of attorneys' fees and expenses, and the expenses of administration." *Zografos*, 2013 WL 3766561, at *2 (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 479 (1980)) (emphasis added). "This calculation applies to precisely the type of settlement presented here, where the [D&O insurance carriers] will pay attorneys' fees separately from the compensation made available to [the Company]." *Id*; *see also In re Jefferies Group, Inc. S'holders Litig.*, 2015 WL 3540662, at *2 (Del. Ch. June 5, 2015) (holding that when attorneys' fees are to be paid in addition to the settlement consideration, the court should calculate the percentage of the fee award based upon the gross amount of the financial benefits).

//

//

//

III.    **CONCLUSION**

Plaintiffs respectfully request that the Court finally approve the Settlement as fair,

reasonable and adequate, finally approve the agreed-to Fee Award as fair and reasonable, and

finally approve the Incentive Awards as fair and reasonable.

Dated: April 14, 2016

**SLATER ROSS**

 */s/ Christopher A. Slater*
Christopher A. Slater, OSB # 97398
Michael J. Ross, OSB # 91410
Sovereign Hotel, 4th Floor
710 S.W. Madison Street
Portland, Oregon  97205
Telephone: (503) 227-2024
Facsimile: (503) 224-7299
cslater@slaterross.com
mjross@slaterross.com

*Local Counsel for Plaintiffs*

**THE WEISER LAW FIRM, P.C.**
Robert B. Weiser
Brett D. Stecker
James M. Ficaro
22 Cassatt Avenue, First Floor
Berwyn, PA 19312
Telephone: (610) 225-2677
Facsimile: (610) 408-8062
rw@weiserlawfirm.com
bds@weiserlawfirm.com
jmf@weiserlawfirm.com

**THE WEISER LAW FIRM, P.C.**
Kathleen A. Herkenhoff
CA Bar ID 168562
12707 High Bluff Drive, Suite 200
San Diego, CA 92130
Telephone:  (858) 794-1441
Facsimile:  (858) 794-1450
kah@weiserlawfirm.com

**HYNES KELLER & HERNANDEZ, LLC**
Michael J. Hynes
Ligaya Hernandez
Hynes Keller & Hernandez, LLC
1150 First Avenue, Suite 501
King of Prussia, PA 19406
Telephone: (610) 994-0292
Facsimile: (914) 752-3041
mhynes@hkh-lawfirm.com
lhernandez@hkh-lawfirm.com

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
685 3rd Avenue
26th Floor
New York, NY 10017
Telephone:  (212) 983-9330
Facsimile: (212) 983-9331

**FEDERMAN & SHERWOOD**
William B. Federman
Sara E. Collier
10205 N Pennsylvania Ave
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
wbf@federmanlaw.com
sec@federmanlaw.com

*Counsel for Plaintiffs Klein and Rathore*

**PRICKETT, JONES & ELLIOTT, P.A.**
Michael Hanrahan
Paul A. Fioravanti, Jr.
Kevin H. Davenport
1310 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 888-6500
Facsimile: (302) 658-8111
Mhanrahan@prickett.com
PAFioravanti@prickett.com
KHDavenport@Prickett.com

**KESSLER TOPAZ
    MELTZER & CHECK, LLP**
Eric L. Zagar
Robin Winchester
Matthew A. Goldstein
280 King of Prussia Road
Radnor, Pennsylvania 19087
Telephone: (610) 667-7706
Facsimile: (267) 948-2512
ezagar@ktmc.com
rwinchester@ktmc.com
mgoldstein@ktmc.com

**GRANT & EISENHOFER P.A.**
Stuart Grant
Cynthia Calder
123 Justison Street
Wilmington, DE 19801
Telephone: (302) 622-7000
Facsimile: (302) 622-7100
sgrant@gelaw.com
ccalder@gelaw.com

**GARDY & NOTIS, LLP**
James S. Notis
Kira German
Tower 56
126 East 56th Street, 8th Floor
New York, NY 10022
Telephone: (212) 905-0509
Facsimile: (212) 905-0508
jnotis@gardylaw.com

**SQUITIERI & FEARON LLP**
Lee Squitieri
32 East 57th Street, 12th Floor
New York, NY 10022
Telephone: (212) 421-6492
Facsimile: (212) 421-6553
lee@sfclasslaw.com

*Counsel for Plaintiffs Fuhs and Spradling*